**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

THE YPSILANTI COMMUNITY
UTILITIES AUTHORITY, ET AL.

        Plaintiffs,                       CASE NO. 07-CV-15280

-vs-

MEADWESTVACO AIR                     PAUL D. BORMAN
SYSTEMS, LLC, ET AL.                  UNITED STATES DISTRICT JUDGE

        Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANT MEADWESTVACO
CORPORATION'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

The matter before the Court is Defendant MeadWestvaco Corporation's ("MWC") January 11, 2008 Motion to Dismiss the Second Amended Complaint (Dkt. No. 4). For the following reasons, as well as those stated on the record, the Court DENIED MWC's Motion to Dismiss at a hearing held on June 10, 2008.

**I.    BACKGROUND**

This breach of contract claim arises from Plaintiffs Ypsilanti Community Utilities Authority and The Christman Company's ("Plaintiffs") allegations that Defendants Bioclimatic Air Systems, LLC, MeadWestvaco Air Systems LLC and MeadWestvaco Corporation ("Defendants") breached a contract by supplying equipment which did not perform to the contracted specifications.[1]

In 2004, Plaintiff Ypsilanti Community Utilities Authority ("YUCA") was expanding the Ypsilanti Township wastewater treatment plant to increase the capacity by 17 million gallons per

---

[1] Defendants have evidenced that "Bioclimatic" is the new name of the previously named limited liability company, MeadWestvaco Air Systems, LLC. For clarity, the Court shall refer to the Defendant limited liability company with its current name.

day and with an approximate total project cost of $ 110 million dollars. (2d Am. Compl. ¶ 8). Plaintiff The Christman Company ("TCC") was the general contractor for YUCA's plant expansion. (*Id*. ¶ 9).

During the project, YCUA studied and considered odor control methods, including a system known as "air ionization." (*Id*. ¶ 10). This process was offered by multiple companies, including Defendant Bioclimatic Air Systems, LLC ("Bioclimatic"). (*Id*. ¶ 11).

Plaintiffs allege that Defendants, including MWC's agents, made "representations and statements, written and oral" that Bioclimatic was backed by an $8 billion dollar company, MWC was a general partner in the limited liability company and was "standing behind" Bioclimatic; there was a research department in South Carolina and a technical group in Virginia, and Bioclimatic had underlying insurance from MWC. (*Id*. at ¶ 12). Plaintiffs further contend Defendants emphasized the fact that MWC was publically traded, and the limited liability company was a "division" of the "worldwide MeadWestvaco Corporation," and the products and services were "guaranteed without an expiration date." (*Id*.).

Plaintiffs allege that they relied on these representations from both Defendants in deciding to purchase the air ionization equipment. (*Id*. ¶ 13). On January 24, 2005, Plaintiff (TCC on behalf of YCUA) executed a contract with Bioclimatic. (*Id*. ¶ 14; Ex. A, Contract).

The contract provides that if the equipment did not satisfy the specifications, the equipment may be returned to the seller and the seller must reimburse the purchase price to the buyer. (Contract at 3).

On or about August 13, 2007, TCC notified Bioclimatic and MWC that the equipment had failed and provided notice that it was prepared to return the equipment in exchange for the purchase

price, in the amount of $876,649. (*Id*. ¶ 17, Ex. B, 8/13/07 Letter). On or about August 17, 2007, Bioclimatic responded by letter denying a breach of contract and refusing to accept return of the equipment or return of the purchase price. (*Id*. ¶ 18, Ex. C, 8/17/07 Letter). Also on August 17, 2007, MWC responded to TCC's notification and indicated that it was not liable for any contract between Bioclimatic and Plaintiffs as MWC was merely an "investor" which had since withdrawn from the joint venture. (*Id*. ¶ 19, Ex. D, MWC Letter).

On September 14, 2007, TCC filed its original complaint in state court solely against Bioclimatic. On November 5, 2007, TCC filed a First Amended Complaint in state court. On November 13, 2007, TCC filed the Second Amended Complaint which added YCUA as a Plaintiff and MWC, MeadWestvaco Air Supply, LLC as defendants. On December 11, 2007, that complaint was removed to this Court. The Second Amended Complaint alleges:

(1)  Breach of contract against Bioclimatic;

(II)  Breach of Contract against MWC and MeadWestvaco Air Supply, LLC;

(III)  Promissory Estoppel against MWC and MeadWestvaco Air Supply, LLC.

## II. ANALYSIS

### A. Legal Standard

The Sixth Circuit has recently summarized the post-*Twombly* legal standard for evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

> "The Supreme Court has recently clarified the pleading standard necessary to survive a Rule 12(b)(6) motion." Factual allegations contained in a complaint must 'raise a right to relief above the speculative level.' *Twombly* does not "require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." "In reviewing a motion to dismiss we can construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff."

*Bassett v. The Nat'l Collegiate Athletic Ass'n*, No. 06-5795, 2008 WL 2329755, *2 (6th Cir. June

3

9, 2008) (internal citations omitted); *see Bell Atl. Corp. v. Twombly*, ___ U.S. ___, 1287 S. Ct. 1955 (2007).

Further, the Court declines to consider Plaintiffs' supplemental affidavit, attached to its response to the motion to dismiss, for the reason that the submitted affidavit is a "matter outside the pleadings" for the purposes fo the Defendant MWC's Rule 12(b)(6) motion.

The Sixth Circuit has held:

> Rule 12(b) of the Federal Rules of Civil Procedure provides that if "matters outside the pleadings are present to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Under certain circumstances, however, a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings. This occurs when "a document is referred to in the complaint and is central to the plaintiff's claim . . . ." In such event, "the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment."

*Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) (internal citations omitted). In the instant case, the affidavit is not attached to the Second Amended Complaint, nor is it referred to in the Second Amended Complaint. Therefore, the Court declines to consider the affidavit in its analysis of the Rule 12(b)(6) motion.[2]

**B.    Motion to Dismiss**

Defendant MWC avers that Plaintiffs' breach of contract claim and promissory estoppel claim against it should be dismissed. Plaintiffs dispute these claims in their response and submit an

---

[2] However, the Court notes that to the extent Plaintiffs referred to certain representations made by Defendant MWC through brochures or other written materials in their Second Amended Complaint, the Court did rely on these brochures and written materials which were attached to the aforementioned affidavit. The Court finds that these specific materials are not "matters outside the pleadings." (*See* Plf. Resp. Ex. 1, Allbaugh Aff., attachments.)

4

affidavit of the project manager of the YCUA construction project to supplement their arguments. As stated previously, the Court declines to consider this affidavit in conjunction with this Motion to Dismiss pursuant to 12(b)(6) as doing so would have the effect of converting the instant Motion to Dismiss into a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

1. Breach of Contract, Count II

MWC contends that Plaintiffs' breach of contract claim must fail because MWC was never a party to the contract at issue. Further, MWC contends that because its role in the transaction was merely as a member of Delaware limited liability company, it cannot be held responsible for the debts or obligations pursuant to Delaware law and Michigan law. *See* 6 Del. C. 18-303(a) (2008); M.C.L. § 450.4501(3).

Plaintiffs do not dispute that MWC was not a party to the contract at issue. However, Plaintiffs assert that they have stated a viable "piercing the veil" claim against MWC.

Michigan courts have upheld the following standard for a piercing the corporate veil theory: "First, the corporate entity must be a mere instrumentality of another entity or individual. Second, the corporate entity must be used to commit a fraud or wrong. Third, there must have been an unjust loss or injury to the plaintiff." *Foodland Distr. v. Al-Naimi*, 220 Mich. App. 453, 457 (1996) (citation omitted).[3]

---

[3] Plaintiffs spend much time asserting that a claim of veil piercing can apply against a limited liability company. MWC does not contend that all veil piercing claims against limited liability companies are meritless based on the corporate structure, but rather argue Plaintiffs have not satisfied the pleading requirements for the claim itself. The Court, therefore, need not examine this claim in any depth, as it does not appear to be an issue. Further, in unpublished cases, both in this District and in the Michigan Court of Appeals, the courts have contemplated or applied such a claim against a limited liability company. *See Travelers Indemnity Co. v. Employers Co.*, No. 71494, 2006 WL 2457478, * 7-8 (E.D. Mich. Aug. 23, 2006) (J., Steeh) (unpublished); *Waun v. Universal Coin Laundry Machine*, No. 267954, 2006

MWC contends that Plaintiffs have failed to sufficiently allege this standard in their Second Amended Complaint by failing to allege that Defendant committed a "fraud or wrong" or that there was an "unjust loss" or injury to the Plaintiff.

Construing the facts in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have alleged sufficient facts to support their claim of breach of contract through a "piercing the corporate veil" theory. Plaintiffs allege Bioclimatic was a "alter ego and/or a mere instrumentality of MWC." (2d Am. Compl. ¶ 27). Plaintiffs further assert, "[i]n negotiating the contract for MeadWestvaco Air Systems, MeadWestvaco Corporation exercised control of the contractual transaction in a manner that <u>defrauded</u> and <u>wronged</u> Christman and YUCA. As a result, Christman and YCUA suffered an <u>unjust loss and injury</u> due to MeadWestvaco Corporations affirmative representations and conduct." (*Id*. ¶¶ 31-32) (emphases added).

To the extent that MWC attempts to argue that its conduct did not amount to actions that would trigger a veil piercing, this argument is more suited to a summary judgment motion. At this stage of the pleadings, the Court must construe the complaint in a light most favorable to Plaintiffs, and "accept all well-pled factual allegations as true, and determine whether plaintiff undoubtedly can prove no set of facts in support of those allegations that would entitle him to relief." *Eidson v. State of Tennessee Dept. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Further, despite MWC's arguments to the contrary, *Twombly* does not require "heightened fact pleading of specifics" from plaintiffs. *Bassett*, 2008 WL 2329755, at *2. Therefore, as Plaintiffs have set forth the adequate allegations and facts which are "plausible on their face" to state a claim of corporate veil piercing, summary judgment on this claim is denied.

---

WL 2742007, *11 n.12 (Mich. Ct. App. Sept. 26, 2006) (unpublished).

### 2. Promissory Estoppel, Count III

MWC avers that Plaintiffs' promissory estoppel claim should be dismissed because it is based on indefinite "representations" which only constitute "puffery" and are insufficient to evidence actual promises upon which reliance could be reasonably placed.

In Michigan, to evidence promissory estoppel a party must demonstrate: (1) there was a promise; (2) the promisor reasonably should have expected the promise to case the promisee to act in a definite and substantial manner; (3) the promissee did in fact rely on the promise by acting in accordance with its terms; and (4) the promise must be enforced to avoid injustice. *Novak v. Nationwide Mut. Ins.*, 235 Mich. App. 675, 686-87 (1999).

Plaintiffs allege in their Second Amended Complaint that MWC made the following representations:

(a) expressed its intent, plan and commitment to the project's satisfactory completion;

(b) represented that its significant financial resources and strength were behind the project and would remain; and

(c) intentionally accentuated to YCUA its financial resources and strength as a reason for YCUA to select [Bioclimatic] as the supplier of air ionization equipment to Christman and YCUA.

(2d. Am. Compl. ¶ 37). Plaintiffs assert that MWC was or should have been aware at the time these promises or representations were made that Plaintiffs would rely upon them. (*Id*. ¶ 41). Further, Plaintiffs allege but for these "expressions and manifestations of intent, plan and commitment" they would not have entered into the contract with Bioclimatic. (*Id*. ¶¶ 39, 42).

The Court finds that these allegations are sufficient to plead promissory estoppel. MWC argues that the Court should find the representations/promises cited in the pleading amount to

7

nothing more than "puffery" and could not have been reasonably relied upon. Again, as stated previously, these arguments are more appropriate for a motion for summary judgment but are premature in this context.[4] Moreover, Plaintiffs' allegations are not so conclusory or devoid of factual allegations such that dismissal is warranted.

## III. CONCLUSION

Therefore, the Court **DENIES** Defendant MWC's Motion to Dismiss Second Amended Complaint (Dkt. No. 4).

**SO ORDERED.**

                        s/Paul D. Borman  
                        PAUL D. BORMAN  
                        UNITED STATES DISTRICT JUDGE

Dated: June 30, 2008

## CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on June 30, 2008.

                        s/Denise Goodine  
                        Case Manager

---

[4] The Court also notes that Defendant's own brief relies primarily upon cases dismissed at the summary judgment stage. (*See* Def. Br. at 11).

8